Filed 6/24/14  P. v. Ficklin CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TANISHA LANESE FICKLIN,<br><br>    Defendant and Appellant. | B248673<br><br>(Los Angeles County<br>Super. Ct. No. YA076088) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lauren Weis Birnstein, Judge.  Affirmed.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant and defendant Tanisha Lanese Ficklin's sole contention on appeal is that she "was denied the effective assistance of counsel at her sentencing hearing when her counsel argued against a grant of probation after the trial court raised that sentencing alternative and appellant expressed an interest in such a disposition."

Appellant was charged with three felony counts:  assault by means likely to produce great bodily injury, in violation of Penal Code section 245, subdivision (a)(1)[1] (count 1); battery with injury on transit personnel  (§ 243.3) (count 2); and assault on mass transit personnel (§ 245.2) (count 3).  The amended information also alleged that appellant had one prior conviction within the meaning of the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and three prior convictions within the meaning of section 667.5, subdivision (b).

Appellant has a history of mental illness, and the proceedings in this case were adjourned and resumed more than once.[2]  Counts 1 and 2 were eventually tried to a jury, which found appellant guilty of the lesser included misdemeanor offense of simple assault (§ 240) on count 1, and guilty as charged on count 2.  Count 3 was not presented to the jury.  Appellant later admitted that the prior conviction allegations were true.

The trial court sentenced appellant to state prison for a total term of eight years, which consisted of the upper term of three years on count 2, doubled to six years due to the prior strike, plus two years for the prior conviction allegations.  The court imposed and stayed a 180-day term on count 1.  Appellant received 1,723 days of presentence custody credits.

---

[1]     All statutory references are to the Penal Code unless otherwise indicated.

[2]     On February 3, 2010, the trial court declared appellant incompetent.  On June 8, 2010, a Patton State Hospital (Patton) report found appellant incompetent.  On October 4, 2010, the court again found appellant incompetent.  On January 4, 2011, the court received receipt of certification of mental competence from Patton, and criminal proceedings were reinstated.  On September 30, 2011, the trial court found appellant not competent.  One year later, on September 19, 2012, the court found that appellant was competent to stand trial, and criminal proceedings were resumed.

2

We affirm the judgment, concluding that appellant has not demonstrated that she received ineffective assistance of counsel at her sentencing hearing.

## FACTUAL BACKGROUND

**Prosecution Evidence**

On September 14, 2009, Joyce Willard (Willard) was driving a bus for the City of Gardena when she pulled to a stop where appellant was waiting. Appellant had several items with her and was talking to herself. Appellant entered the bus and dropped off some bags, then left and got the rest of her things. Appellant paid her fare with an invalid token. Willard did not say anything because appellant seemed upset.

Appellant sat in a seat behind and to the right of Willard. She became "more angry and more verbal," and said, "If this bitch keep stepping on the brake, I'm going to beat her ass." Appellant stood up and spit several times toward a trash can next to Willard's leg. Willard told her to stop, and slid the trash can toward appellant. Appellant replied, "Bitch, I'll spit on you. I'm not spitting in there." Willard telephoned her supervisor and asked for police assistance.

At one of the next stops, appellant got up and began collecting her stuff. She asked if Willard had contacted the police. Willard said that she had. Willard took off her seatbelt and stood up to see if the police were behind her. Appellant then struck Willard about three times on the head with a metal makeup case. Willard lost consciousness for a couple of seconds.

Chanita Gardner, another Gardena city bus driver, heard Willard's call for help and stopped her bus in front of Willard's. Gardner approached Willard's bus and saw appellant strike Willard on the head with the metal case. Gardner grabbed appellant and pulled her off the bus. Appellant went limp, and Gardner let her go. Appellant walked away.

Gardena Police Department Officer Evan Jackson took appellant into custody about five blocks from the incident. Appellant did not appear to be injured and was very agitated. She had a metal case in her possession.

3

**Defense Evidence**

Appellant testified that she was waiting at the bus stop on the day of the incident with several items, including a makeup case. The bus sped past her and then "stopped abruptly just out of [her] reach, out of [her] realm of understanding." Once seated on the bus, appellant thought Willard was deliberately trying to make the bus shake and was looking at her in the windshield's reflection. Appellant had to spit, so she waited until the bus stopped and spit out the open door. Willard slid the trash can toward appellant, and appellant spit in the trash can three times.

Appellant heard Willard say on the phone that someone was spitting. Appellant was scared of being arrested and got ready to exit the bus at the next stop. She saw another bus stopped in front and felt uneasy. Appellant and Willard stood up, and Willard blocked the exit. Willard began to strike appellant with an object in her hand. Appellant then struck Willard twice with her makeup case before another bus driver put appellant in a chokehold. While appellant was being held in the chokehold, Willard began striking appellant's chest with an object. Appellant fought back by hitting Willard on the head again with her makeup case. As appellant struck Willard, she was thinking: "'Why aren't you letting me go to school? I just want to go to school.' And then I flashed back to being on a prison yard, and I tried to kill her." Appellant testified that she struck Willard about 12 times.

## PROCEDURAL BACKGROUND

The trial court began the sentencing hearing by noting that "we have had numerous discussions about the correct thing to do in this case," and "[b]ecause the defendant did not choose to waive her back time and to seek treatment, I think I am really put in a position of sentencing her to the maximum time allowable under the law because I do believe that she is a violent person when she is not on medication and she is a danger to society." The court also noted that it had considered appellant's mental health records and had read several reports on appellant's psychological evaluations.

Defense counsel noted that appellant suffered from mental illness and some fixed delusions, and argued these should be taken into account as mitigating factors. Counsel

4

urged the court to consider striking appellant's priors and choosing the midterm instead of the high term.

The prosecutor noted that he was put in the same "difficult situation" as the trial court because appellant "is a disturbed individual, and at times she can be very cooperative and a very pleasant person," but she can also be "an extremely violent person," as indicated by her testimony that she was trying to kill the bus driver. While the prosecutor preferred that appellant go to a mental healthcare facility, he also felt that appellant needed to be separated from society for as long as possible because "[w]hen she is on the street, we don't know what she is going to do. She is definitely capable of violence as she has shown."

The trial court stated that it also preferred that appellant get treatment for her mental health issues, but noted that she refused to see any mental healthcare professionals. Defense counsel stated: "The time that I spoke with her at the jail about a mental health treatment program she indicated that she was interested in doing that. The thing[] that has happened since then is she has not come out of her cell in order to speak with mental health professionals. [¶] . . . I can say she refused to come out of her cell to speak with people, but never flat-out refused the offer that the court gave. It was more of an implied refusal by failing to come out."

The trial court then spoke directly to appellant:

"[THE COURT]: Ms. Ficklin [appellant], your attorney and the prosecutor and I had discussed that you—and this is a big deal for you—you would be waiving all of your back-time. You would be waiving like a total of 1,723 days.

"[APPELLANT]: Waiving it for what?

"[THE COURT]: You would be giving that up in exchange for having a five-year sentence in prison which is what you will at least get now. You will actually get more now, but minus the credits, having that prison sentence hang over your head with the understanding that nothing would happen to you for a certain number of years. [¶] . . . [¶] You would be on probation, but you would be required to be taking medication, which I know you don't like to do, or being in some kind of a facility where you were

5

treated instead of going back to prison now. That is what we had discussed. [¶] But because you refuse to talk to anybody or come out of your cell or whatever, that option is really not available at this time. [¶] So, Ms. Langston [defense counsel], I want to hear from you if you want the court to still consider that option.

"[DEFENSE COUNSEL]: I just want the court not to take the refusal into consideration the way that the court was terming it. I think it is a different type of refusal that the Court was originally speaking of.

"[THE COURT]: Let me ask you this: Do you want to have that possibility on the table at this time?

"[DEFENSE COUNSEL]: I don't know that it could even happen at this time, and the reason is that I have had Dr. Parham look into it. I had the mental health professionals come. Basically they said she won't come out of her cell. We can't do anything. So that has happened, but ideas–I don't want the court to think that [appellant] said I flat-out refused to do that. I will not do that. That is not the way it happened.

"[THE COURT]: Ms. Ficklin [appellant], I don't think the possibility is here anymore.

"[APPELLANT]: For probation?

"[THE COURT]: For you to do probation, waive your back time, and get into a mental health treatment program.

"[APPELLANT]: I think that is a great option.

"[THE COURT]: Okay. Mr. Harlan [prosecutor], I will hear from you. I know that your office had agreed to that. You had gotten some indication from your supervisors . . . [¶] . . . [¶] The option, I believe that we had discussed was, somewhere around 5 years of probation, she would be sentenced to the 5 years of state prison, she would waive all of her back-time, and if—Ms. Ficklin, you need to listen very carefully to this—and if you got into a program, if they were able to find a program for you, this is only if they can find that program, you would have to stay in that program and you would have to comply with all of the rules of that program. So that might be hard to for you to do. I don't know. What do you think about that?

6

"[APPELLANT]: Whatever my attorney thinks.

"[THE COURT]: That is a big burden that you are putting on your attorney because she needs input from you whether you are going to be able to comply with that.

"[DEFENSE COUNSEL]: I don't think at this point, Your Honor, that she is going to be able to get into a program. I think that mental health has tried, and that is the extent of it. Essentially Dr. Parham told me there is nothing that we can do at this point. I don't want to give Ms. Ficklin a false hope of being able to do that. Whether she actually wants to do that or not, I don't know, but I don't want to give her a false hope of being able to do that if it is truly not a possibility.

"[THE COURT]: Then we are going to go ahead then on the sentencing."

The trial court then sentenced appellant to a total term of eight years in state prison, with 1,723 days of presentence custody credits.

## DISCUSSION

### *Applicable Law*

"Preliminarily, we note that rarely will an appellate record establish ineffective assistance of counsel." (*People v. Thompson* (2010) 49 Cal.4th 79, 122.) "We have repeatedly stressed 'that "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.'" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

"To establish a violation of the constitutional right to effective assistance of counsel, a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" (*People v. Kipp* (1998) 18 Cal.4th 349, 366, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 686; *In re Lucas* (2004) 33 Cal.4th 682, 721; *People v. Frye* (1998) 18 Cal.4th 894, 979.)

7

To demonstrate prejudice, the defendant must establish that as a result of counsel's failures the trial was unreliable or fundamentally unfair. (*In re Visciotti* (1996) 14 Cal.4th 325, 352.) The defendant must show that "there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003.) Mere speculation does not meet the Sixth Amendment standard for demonstrating prejudice. (*In re Clark* (1993) 5 Cal.4th 750, 766.) It is not enough to allege that an attorney's tactics were poor or that the case might have been handled differently; the defendant must "'affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics.'" (*People v. Jackson* (1980) 28 Cal.3d 264, 288.)

*Analysis*

Appellant cannot demonstrate either that her defense counsel performed deficiently or that she was prejudiced by her counsel's actions.

Appellant argues that defense counsel performed deficiently at the sentencing hearing by failing to advocate for a grant of probation. Appellant asserts that "the trial court's [proposed] disposition was *not* dependent on appellant being in an in-patient facility," as her counsel apparently believed. But the record shows that any probationary term was dependent on appellant participating in some kind of treatment program. When the trial court first spoke directly to appellant during the sentencing hearing, the court stated: "You would be on probation, but you would be required to be taking medication, which I know you don't like to do, or being in some kind of a facility where you were treated instead of going back to prison now. That is what we had discussed." The court then stated to appellant that it did not think the possibility of probation was still an option, saying that probation would include a waiver of appellant's back time and for appellant to "get into a mental health treatment program." The court reiterated that the option of probation which the parties had discussed included a waiver of back time and being in a treatment program. In this regard, the court addressed appellant again, telling her to listen very carefully, and stating: "[A]nd if you got into a program, if they were

8

able to find a program for you, this is only if they can find that program, you would have to stay in that program and you would have to comply with all of the rules of that program."

Defense counsel then stated that she did not think appellant was "going to be able to get into a program." Counsel explained that she had sent mental healthcare professionals to visit appellant in jail, but appellant had refused to leave her cell to talk to any professionals, and one of the professionals had stated there was nothing more that could be done for appellant due to appellant's noncooperation. Counsel added that she did not want to give appellant a false sense of hope of being able to get into a treatment program. When defense counsel had finished speaking, the trial court did not indicate that counsel had misunderstood the proposed terms of probation or correct her in any way. Instead, the court immediately proceeded to sentencing.

This was not a case where defense counsel simply stood next to her client and acquiesced in everything the trial court and the prosecutor suggested. Indeed, at the beginning of the sentencing hearing, defense counsel asked the trial court to exercise leniency in sentencing appellant, urging the court to treat appellant's mental illness as a mitigating factor and to strike her priors and choose the midterm instead of the high term. Defense counsel also informed the court that appellant had expressed an interest in a mental healthcare treatment program and made clear to the court that appellant had never "flat-out" refused such an offer, only that appellant had refused to come out of her jail cell to speak to any mental healthcare professionals.

Given appellant's history of noncooperation with mental healthcare professionals, a prison sentence was the only option left. Defense counsel was not ineffective for failing to argue for an alternate probation disposition that was no longer a possibility.

Even assuming that a reasonably competent attorney would have argued for probation, appellant has failed to show that, but for counsel's deficiencies, she would have received a more favorable outcome. (*People v. Riel* (2000) 22 Cal.4th 1153, 1175; *People v. Frye, supra*, 18 Cal.4th at p. 979.) Appellant has not demonstrated an ability to comply with a court order that she participate in a mental healthcare program and take

9

her medication. She also never stated that she was willing to waive her custody credits, which was a necessary condition of probation. Thus, there is no indication that the trial court would have stayed a prison term and imposed a probationary period, especially given the serious and violent nature of appellant's assault and her expressed intent to kill the bus driver.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
          ASHMANN-GERST

We concur:


_____, J.
      CHAVEZ


_____, J.[*]
      FERNS

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10